# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|                                         |     |                              |
|-----------------------------------------|-----|------------------------------|
| **ANDREW L. CRAIG,**                    | )   |                              |
|                                         | )   |                              |
| **Plaintiff,**                          | )   | **No. 3:12-cv-00333**        |
|                                         | )   |                              |
| **v.**                                  | )   | **Judge Nixon**              |
|                                         | )   | **Magistrate Judge Knowles** |
| **CAROLYN W. COLVIN,**                  | )   |                              |
| **Commissioner of Social Security,**    | )   |                              |
|                                         | )   |                              |
| **Defendant.**                          | )   |                              |

## ORDER

Pending before the Court is Plaintiff Andrew L. Craig's Motion for Judgment on the Administrative Record ("Motion") (Doc. No. 15.), filed with a Memorandum in Support (Doc. No. 16). Defendant Commissioner of Social Security ("Commissioner") filed a Response to Plaintiff's Motion. (Doc. No. 17.) Subsequently, Magistrate Judge Knowles issued a Report and Recommendation ("Report"), recommending that Plaintiff's Motion be denied, and the decision of the Commissioner be affirmed. (Doc. No. 18 at 25.) Plaintiff filed Objections to the Report. (Doc. No. 19.) Upon review of the Report and for the reasons stated below, the Court **GRANTS in part** Plaintiff's Motion, reverses the ALJ's decision, and **REMANDS** the case to the Commissioner for further proceedings consistent with this Order.

## I. BACKGROUND

### A. Procedural Background

Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on December 5, 2007, alleging that he had been disabled since January 1, 2005, due to "[o]bstructive sleep apnea, asthma, leg problems, and a learning disability." (Tr.

69–72, 244.)[1]  The Social Security Administration ("SSA") denied Plaintiff's application both initially on March 7, 2008 (Tr. 77–80), and upon reconsideration on July 29, 2008 (Tr. 85–88). Plaintiff subsequently requested (Tr. 89) and was granted a hearing before an Administrative Law Judge ("ALJ") (Tr. 97).  The hearing was conducted on February 23, 2010, before ALJ John Daughtrey.  (Tr. 37, 97.)  Plaintiff was represented at the hearing by attorney Chris George, and Plaintiff, Plaintiff's brother, Joey Craig, and vocational expert ("VE") Lisa A. Courtney testified at the hearing.  (Tr. 37–68.)

On May 7, 2010, the ALJ issued a decision finding Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 20–32.)  The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2011.
2. The claimant has not engaged in substantial gainful activity since January 1, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
3. The claimant has obesity, asthma, obstructive sleep apnea, mild cardiomegaly and history of a leaning [sic] disorder, which are considered a "severe" combination of impairments, but not severe enough, either singly or in combination, to meet or medically equal the requirements set forth in the Listing of Impairments. Appendix I to Subpart P, Regulations No. 4.
4. After consideration of the entire record, the Administrative Law Judge finds that the claimant has the residual functional capacity to lift and carry up to 20 pounds occasionally and up to 10 pounds frequently; stand and walk up to four hours in an eight-hour workday, with normal breaks; sit up to six hours in an eight-hour workday, with normal breaks; with the option to stand and sit at will; occasionally balance, stoop, kneel, crouch, crawl and climb stairs and ramps; but no ability to climb ladders, scaffolds or ropes; and should avoid concentrated exposure to extreme heat/humidity, pulmonary irritants and workplace hazards. Additionally, he is able to understand, remember and carry out two to three step instructions; can maintain concentration and persistence for two to three step tasks; can interact appropriately with supervisors, co-workers and the general public and can adapt to occasional workplace changes.
5. The claimant is able to perform past relevant work (20 CFR 404.1565 and 416.965).

_____
[1] An electronic copy of the administrative record is docketed at Doc. No. 11.

6. The claimant is 31 years old, described as a younger individual (20 CFR 404.1563 and 416.963).
7. The claimant has an eleventh grade education and is able to communicate in English (20 CFR 404.1564 and 416.964).
8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569, 404.1569(a), 416.969, and 416.969(a)).
10. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 25–31.)

On May 28, 2010, Plaintiff timely filed a request for review of the hearing decision. (Tr. 18–19.) The Social Security Appeals Council issued a letter denying Plaintiff's request for review on March 13, 2012, thereby rendering the decision of the ALJ the final decision of the Commissioner. (Tr. 1.) Plaintiff filed this action on April 2, 2012, seeking judicial review of the ALJ's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Doc. No. 1.) Pursuant to Magistrate Judge Knowles's May 30, 2012, order (Doc. No. 12), Plaintiff filed a Motion for Judgment on the Administrative Record (Doc. No. 15), and a Memorandum in Support (Doc. No. 16) on July 18, 2012. Defendant filed a Response on August 17, 2012. (Doc. No. 17.) On June 12, 2013, Magistrate Judge Knowles issued the Report, recommending that Plaintiff's Motion be denied, and the decision of the Commissioner be affirmed. (Doc. No. 18 at 25.)

Plaintiff filed three objections to the Magistrate Judge's findings on June 26, 2013, specifically: (1) the Report fails to address salient medical and testimonial evidence cited by Plaintiff; (2) the Report accepts, without critical analysis, the ALJ's mischaracterization of the objective evidence of sleep apnea; and (3) the Report does not address the glaring inconsistency

between the ALJ's finding that Plaintiff was not credible in describing his somnolence and the direct firsthand observations of somnolence by an SSA claims representative, a consultative examiner, and the ALJ himself. (Doc. No. 19.)

### B. Factual Background

Plaintiff was born on February 1, 1979, and claims disability for obstructive sleep apnea, asthma, leg problems, and a learning disability beginning on January 1, 2005. (Tr. 69–70, 118–127.)

### 1. Educational and Psychological History

Though he testified to only attending through the ninth grade, Plaintiff's records show he completed school through the eleventh grade. (Tr. 43, 248, 275–290.) Plaintiff testified at the administrative hearing that he attended remedial classes and can read and write, but is unable to spell. (Tr. 43.) Plaintiff was evaluated on March 15, 1995, by examining psychologist Crystal Morgan, Psy.D., in compliance with regulatory requirements for students receiving special education services. (Tr. 296–301.) Dr. Morgan concluded that Plaintiff continued to meet the criteria for special education services, and that his intellectual functioning was in the "Low Average range." (Tr. 301.) During the disability benefits consultative exam conducted on February 1, 2008, Bruce A. Davis, M.D., concluded that Plaintiff suffered from anxiety and was a "slow learner." (Tr. 305.)

On February 4, 2008, senior psychological examiner Robert Doran, M.A., performed a psychological examination of Plaintiff in connection with his application for disability benefits. (Tr. 308–10.) During the hour-long evaluation, Mr. Doran generally observed that Plaintiff's "speech sounded strained. He breathed through his mouth, making snoring sounds." (Tr. 308.) Plaintiff reported that he had applied for benefits due to "sleep apnea and problems walking; his

4

legs swell up." (Tr. 309.)  He also reported that he smokes one-half pack of cigarettes every day,

falls asleep during the day when he tries to focus, and that he "is up and down all night" and

"might sleep for five hours." (*Id.*)  Mr. Doran noted that Plaintiff appeared to be sleepy and to

fall asleep twice during the interview. (*Id.*)  Mr. Doran concluded that Plaintiff was mildly

limited in understanding, remembering, interacting with others, and adapting to

changes/requirements; and moderately limited in sustained concentration and persistence. (Tr.

310.)

2. <u>Medical History</u>

Donald Zedalis, M.D., of the Allergy and Sleep Disorders Network evaluated Plaintiff in

April 2004 for complaints of chronic sleepiness. (Tr. 373–85)  Plaintiff relayed a history of

daytime sleepiness, including falling asleep during class in school. (Tr. 374.)  Plaintiff's stated

complaints included: snoring and apneic episodes, associated with occasional snorting,

smothering, sleepwalking, common nocturnal gasping, and frequent awakenings. (*Id.*)  Plaintiff

also reported that he was unable to maintain employment because of his drowsiness. (*Id.*)  Dr.

Zedalis determined Plaintiff's Epworth Sleepiness Scale ("ESS")[2] score was 19/24, "which is

consistent with moderate excessive daytime sleepiness." (*Id.*)  Dr. Zedalis conducted a sleep

study on Plaintiff on April 13, 2004, the results of which were consistent with Plaintiff suffering

from "[o]bstructive sleep apnea, severe, associated with mild nocturnal hypoxemia, controlled by

Bi-level CPAP. . . [; s]leep onset and sleep maintenance insomnia . . . [; and b]ruxism." (Tr.

381.)  Significantly, pulmonary function testing revealed Plaintiff had a mild restrictive

---

[2] According to its website, the ESS is "a self-administered questionnaire with 8 questions [that] provides a measure of a person's general level of daytime sleepiness, or their average sleep propensity in daily life."  Murray Johns, What the Epworth Sleepiness Scale Is and How to Use It, *The Epworth Sleepiness Scale*, http://epworthsleepinessscale.com/about-epworth-sleepiness/ (last visited Mar. 27, 2014).

ventilator defect. (Tr. 385.) Persistent, moderately loud to significantly loud snoring was observed by the night technologist, but was eliminated with Bi-level CPAP. (Tr. 381)

Plaintiff had several emergency room visits, from 2005 to 2008 for, among other things, episodic exacerbations of dyspnea (shortness of breath), associated with chest pain and tightness and complaints of left lower extremity pain and swelling. (Tr. 27, 361–68, 386, 425, 472–75, 480–83.)

On February 1, 2008, Dr. Davis performed a consultative exam of Plaintiff in connection with his disability claim. (Tr. 303–05.) Plaintiff complained of asthma, sleep apnea, and bilateral leg pain, swelling, and unsteadiness. (Tr. 303.) Plaintiff was short of breath, with heavy mouth breathing. (Tr. 304.) Dr. Davis diagnosed Plaintiff with Class 3 extreme obesity, lung disease ("persistent asthma/cigarette lung disease, obstructive sleep apnea"), musculoskeletal disease ("bilateral lower extremity pain, unsteadiness"), and with conditions of anxiety and slow learning. (Tr. 305.) Dr. Davis noted that Plaintiff was documented in 2003 as having "sleep apnea with nighttime and daytime complaints," but was "unable to afford C-PAP machine treatment." (Tr. 303.) Dr. Davis opined that Plaintiff could perform certain work-related activities including: occasionally lifting ten to twenty pounds, frequently lifting ten pounds, standing or walking a total of four hours in an eight-hour workday, and sitting for a total of eight hours in an eight-hour workday. (Tr. 305.) Dr. Davis also noted that Plaintiff should only perform limited kneeling or squatting, and his exposure to heat/humidity, climbing/heights, irritating inhalants, and dangerous machinery/vehicles should be limited. (*Id.*)

In February 2008, Anita L. Johnson, M.D. reviewed Plaintiff's medical records in connection with his applications for disability benefits. (Tr. 29, 311–14.) She described Plaintiff's complaints of obstructive sleep apnea, asthma, and leg problems and noted Dr.

Davis's clinical examination findings. (Tr. 29, 314.) Dr. Johnson opined that Dr. Davis's assessment was too restrictive given Plaintiff's normal ranges of motion, strength, and normal gait. (*Id.*) Dr. Johnson further opined that Plaintiff's physical impairments were non-severe, singly or in combination. (Tr. 29, 311.)

In July 2008, Joe G. Allison, M.D., also reviewed the evidence in connection with Plaintiff's disability benefits applications. (Tr. 29, 369–372.) Dr. Allison noted that Plaintiff reported difficulties staying awake. (Tr. 372.) However, he determined that Plaintiff's statements were "partially credible due to only mild cardiomegaly [sic] and no sleep studies have been done." (*Id.*) Dr. Allison concluded that all of the conditions Plaintiff alleged failed to impose functional limitations both singly and combined, and as a result were non-severe. (*Id.*)

At Plaintiff's administrative hearing on February 23, 2010, Plaintiff testified that he is only able to do activities for about fifteen minutes before he falls asleep, while standing or sitting. (Tr. 55.) He also stated that he currently smokes one-half pack of cigarettes per day, down from two packs per day. (Tr. 48.) Plaintiff used an inhaler during the hearing and exposed his swollen left leg, which the ALJ noted was visibly larger than his right leg. (Tr. 49, 52.) He described his pain as an eight or nine on a zero to ten pain scale. (Tr. 26, 50.) Plaintiff testified that standing and walking affects his left leg, and that he can stand and walk approximately fifteen to twenty minutes before needing to sit down. (Tr. 50, 55) Plaintiff testified that he was prescribed Lortab for the pain, but did not have this medication at the time of the hearing. (Tr. 50.) Plaintiff also stated that he uses inhalers twice a day and as needed, and does nebulizer treatments once a week for asthma, COPD, and chronic bronchitis. (Tr. 49.) Plaintiff testified that he uses a CPAP machine every night, which he said helps him sleep, but overall seems to have had diminishing results over time. (*Id.*)

3. <u>Employment History</u>

At Plaintiff's administrative hearing, VE Courtney testified that Plaintiff has past relevant work as a tow motor operator, truck driver, security guard, material handler, and delivery driver. (Tr. 62–63.)  The VE also testified that Plaintiff could perform work as a security guard, except in areas where pulmonary irritants or occupational hazards such as heights could be found.  (Tr. 64.)

Plaintiff testified that he last worked as a security guard one to two weeks prior to the hearing, three days a week, for four to eight hours a day.  (Tr. 45–47.)  He further testified that his brother had to nudge him when he dozed off at work and try to keep him motivated.  (Tr. 50.)  Plaintiff testified that he was fired due to sleeping and that he falls asleep when standing up or sitting down.  (Tr. 53, 55.)

Plaintiff's brother, Joey Craig, testified that Plaintiff fell asleep frequently at work and that if someone was not there "literally shaking him, and tapping him, he would be standing straight up, eyes closed, and just wobbling, just asleep." (Tr. 58–59.)  Mr. Craig testified that he and Plaintiff had both lost job contracts because Plaintiff kept falling asleep while at work.  (Tr. 58.)  Consequently, Craig had to stay with Plaintiff and keep him moving at any worksite.  (Tr. 60–61.)  Of note, ALJ Daughtrey observed in his decision that Plaintiff appeared to fall asleep at the hearing, and was nudged by his attorney to keep him awake.  (Tr. 27)

ALJ Daughtrey posed three different hypotheticals to VE Courtney.  (Tr. 63–66.)  The first hypothetical individual the ALJ posited had the RFC assigned to Plaintiff by the ALJ, and the following limitations: can lift and carry up to twenty pounds occasionally and up to ten pounds frequently; can stand, walk, or sit at least six of an eight hour work  day; can push and pull freely but only do occasional postural activities including climbing, balancing, stooping,

kneeling, crouching, crawling, and squatting; should avoid heights, concentrated exposure to extreme heat, humidity, pulmonary irritants, and workplace hazards; and has mental limitations to the extent that he or she can only carry out two to three step tasks. (Tr. 63–64.) VE Courtney testified that based on this hypothetical, the individual could do security work, as well as other light, unskilled jobs such as shoe packer or lamp tester. (Tr. 64–65.) At this point in the hearing, Plaintiff's attorney noticed Plaintiff was asleep and had verbally wake him up. (*Id.*) When ALJ Daughtrey's reduced the hypothetical individual's ability to stand or walk to four out of an eight-hour day, the VE testified that the limitation would result in about 30 percent fewer jobs the individual could do. (Tr. 65–66.) In the third hypothetical, the ALJ asked the VE whether there existed jobs for an individual who possessed the limitations that Plaintiff testified to during the hearing. (Tr. 66.) In response, the VE testified that no jobs existed for a person who could not maintain concentration and persistence on a regular and continuous basis in two-hour segments. (Tr. 66.)

## II.    STANDARD OF REVIEW

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b) (2012). However, review is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (2012). Accordingly, the reviewing court will uphold the ALJ's decision if it is supported by substantial evidence. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is a term of art and is defined as "such evidence as a reasonable mind would accept as adequate to support the

conclusion." *Richardson v. Pereles*, 402 U.S. 389, 401 (1979). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

A finding of substantial evidence holds significant weight on appeal. "Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (1990) (citing *Mullen v. Brown*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*)); *Her v. Comm'r*, 203 F.3d 388, 389 (6th Cir. 1999);. This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations, because these factual determinations are left to the ALJ and the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to a different factual conclusion as to the Plaintiff's claim on the merits than that of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

III.    **PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT**

In Plaintiff's Memorandum in Support for his Motion, he argues the ALJ erred in making the following findings: (1) Plaintiff's testimony concerning his extreme sleepiness due to obstructive sleep apnea was not fully credible; (2) Plaintiff could perform his past relevant work; and (3) Plaintiff could perform occupations described by the VE. (Doc. No. 16 at 16–21.)

In addition, Plaintiff sets forth three specific objections to the Magistrate Judge's Report. First, Plaintiff argues that the Magistrate Judge failed to address salient medical and testimonial evidence in the record. (Doc. No. 19 at 1–2.) Next, Plaintiff argues that the Magistrate accepted

the ALJ's mischaracterization of the evidence of sleep apnea without critical analysis. (*Id.* at 2–5.) Finally, Plaintiff argues that the Magistrate Judge failed to address the inconsistency between the ALJ's finding that Plaintiff was not credible in describing his symptoms of sleep apnea and the firsthand observations of drowsiness made by an SSA claims representative, a consultative examiner, and the ALJ. (*Id.* at 5–6.)

The SSA has developed a five-step sequential process for ALJs to use in evaluating whether a claimant is disabled. 20 C.F.R. § 404.1520(a) (2013). The first step requires the ALJ to determine whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). In the second step the ALJ determines whether the claimant has a "medically determinable impairment that is 'severe' or a combination of impairments that is 'severe.'" *Id.* § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the claimant's impairments meet or medically equal one of the impairments listed in the controlling SSA regulation. *Id.* §§ 404.1520(a)(4)(iii), 416.925, 416.926. The fourth and fifth steps require the ALJ to inquire into the claimant's RFC: assessing ability to do mental and physical work on a sustained basis despite limitations, and to determine the claimant's ability to do past or other relevant work. *Id.* § 404.1520(a)(4)(iv) and (v).

Plaintiff's Objections to the Magistrate Judge's Report appear to encompass the same arguments made in his Motion, namely that Plaintiff's testimony regarding obstructive sleep apnea symptoms was not given appropriate weight or fully examined by the ALJ, and was not adequately reviewed by the Magistrate Judge. The Court analyzes Plaintiff's objections as two separate arguments for why the ALJ lacked substantial evidence to support his conclusions: (1) the ALJ's failure to properly credit the objective medical evidence of sleep apnea; and (2) the

ALJ's improper credibility determinations, and failure to consider testimonial evidence and other evidence cited by Plaintiff.  The Court considers each of Plaintiff's arguments in turn.

### A.   *Objective Medical Evidence of Sleep Apnea*

Plaintiff argues that the ALJ failed to understand the nature of his diagnosed sleep apnea, which results in excessive daytime sleepiness and the inability to stay awake consistently, and thus erred in finding that Plaintiff did not have a severe medical impairment.  (Doc. Nos. 16 at 16, 18; 19 at 2–3.)  The ALJ concluded that "these symptoms were controlled with bi-level CPAP titration" administered during a sleep study.  (Tr. 27.)  However, Plaintiff contends that the facts surrounding his sleep study do not support the ALJ's conclusion that his condition "responded well to CPAP titration," and cannot be accepted conclusively.  (Doc. Nos. 16 at 17–18; 19 at 3–4.)  Plaintiff states that, according to the notes of the technician monitoring his sleep study, "after unsuccessfully tolerating single-level CPAP, [Plaintiff] was given a sedative (Ambien), bi-level CPAP was started, he 'looked great' for over an hour and started having symptoms, his pressure was adjusted, twice, and he slept for 30 minutes before the test was terminated."  (Doc. No. 16 at 17.)  Plaintiff argues that these facts are not supportive of the ALJ's determination that he responded well to CPAP titration, because the remediation took place in April 2004 and adjustments had to be made twice for Plaintiff to achieve 30 minutes of sleep.  (*Id.*)  ALJ Daughtrey concluded that Plaintiff provided "no credible medical evidence suggesting that [Plaintiff] has been diagnosed with narcolepsy or a medical condition that would cause him to spontaneously fall asleep repeatedly."  (Tr. 27.)  However, Plaintiff argues a common symptom of obstructive sleep apnea is "fighting sleepiness during the day, at work, or while driving." (Doc. No. 19 at 3.)

The ALJ must determine whether a claimant's impairment is "severe" at the second step of his or her analysis. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. *Id.* An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; SSR 85-28, 1985 WL 568856 (Jan. 1, 2985); SSR 96-3p, 1996 WL 374181 (July 2, 1996); SSR 96-4p, 1996 WL 374187 (July 2, 1996). If the claimant does not have a severe medically determinable impairment or combination of impairments, he or she is not disabled for the purposes of SSA benefits. 20 C.F.R. § 404.1520(a)(4)(ii).

The SSA uses a two-step standard for evaluating pain and other symptoms. *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986); *see* 20 C.F.R. § 404.1529(a). The SSA first determines whether there is a medically determinable impairment that could reasonably be expected to cause the claimant's symptoms. *See* 20 C.F.R. § 404.1529(b). If such an impairment is found, the SSA evaluates the intensity and persistence of the symptoms to determine the extent to which the symptoms limit the claimant's capacity for work. *Id.* In determining whether a claimant is disabled, the SSA takes into consideration the extent to which the symptoms can reasonably be accepted as consistent with objective medical evidence[3] and other evidence,[4] based on the requirements of 20 C.F.R. § 416.929 and SSR 96-4p and Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996). *Duncan*, 801 F.2d at 853.

---

[3] Objective medical evidence consists of "medical signs and laboratory findings." 20 CFR § 404.1529(a).
[4] "Other evidence" includes the evidence described in SSA regulations regarding evidence of impairments generally and medical evidence, which includes statements or reports from the claimant, the claimant's treating or non-treating sources, and other evidence regarding the claimant's medical history, diagnosis, prescribed treatment, daily

Once a disability claimant has presented objective medical evidence that he or she suffers from an impairment that could cause pain, he or she need not present objective medical evidence to support severity of the pain. *Jones v. Sec'y of Health & Human Servs.,* 945 F.2d 1365, 1369–70 (6th Cir. 1991). Appropriate weight must be given to lay testimony regarding pain if that testimony is consistent with objective medical evidence, and the ALJ may not reject a claim of disabling pain solely because the degree of pain is not objectively established. *Id.* Pain alone, if it results from a medically determinable impairment, can cause a disability. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). The ALJ should evaluate the severity of the pain suffered by the claimant using the same objective medical evidence used to conclude that the underlying medical condition exists. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Allegations of pain or symptoms cannot be rejected solely on the basis of medical evidence. *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994).

When evaluating evidence of pain or other subjective complaints, the ALJ should consider the following factors: (1) the claimant's daily activities; (2) the location, duration, intensity, and frequency of pain; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment other than medication the claimant has received for the pain; (6) other measures the claimant has used to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions caused by pain. 20 C.F.R. § 402.1529(c)(3)(i)-(vii).

Here, ALJ Daughtrey first appeared to conclude that Plaintiff has a medically determinable impairment that could reasonably be expected to cause his symptoms. The ALJ found that Plaintiff "has been diagnosed with obstructive sleep apnea, but the medical evidence

---

activities, efforts to work, and any other evidence showing how the claimant's impairment(s) and any related symptoms affect the claimant's ability to work. 20 CFR § 404.1529(a).

of record suggests that this condition responded well to CPAP titration . . . ." (Tr. 27.)  The ALJ also acknowledged that Plaintiff's 2004 sleep study "was consistent with severe obstructive sleep apnea, associated with mild nocturnal hypoxemia, delayed sleep onset, and bruxism."  *(Id.)*  In accepting Plaintiff's diagnosis of sleep apnea, the ALJ effectively determined that Plaintiff possessed a medical impairment that could reasonably be expected to cause the symptoms alleged.

However, the Court finds the ALJ did not sufficiently demonstrate an initial evaluation of the severity of each of Plaintiff's conditions individually to arrive at the conclusion that they were not "severe enough" in combination.  In evaluating the severity of the Plaintiff's symptoms, the ALJ concluded that "[t]he claimant has obesity, asthma, obstructive sleep apnea, mild cardiomegaly and history of a leaning [sic] disorder, which are considered a 'severe' combination of impairments, but not severe enough, either singly or in combination, to meet or medically equal the requirements set forth in the Listing of Impairments."  (Tr. 25.)  It appears that the ALJ accepted Plaintiff's diagnosis of sleep apnea, yet also found that Plaintiff's symptoms were not severe because of a satisfactory response to CPAP treatment.  The Court finds ALJ Daughtrey's dismissal of Plaintiff's claims of sleep apnea—concluding that it was being controlled with CPAP titration—without taking into consideration factors, such as the adjustments needed for CPAP treatment to be successful and whether this particular treatment continued to be effective for Plaintiff, was not based on substantial evidence in the record.  *See Maloney v. Apfel*, 211 F.3d 1269, at *2 (6th Cir. 2000) (unpublished table decision) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)) ("An impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience.") (quotation marks and internal brackets omitted).

The Court also finds that substantial evidence does not support ALJ Daughtrey's decision to accord little weight to Plaintiff's sleep apnea, as it is consistent with objective medical evidence in the record. Plaintiff was not obligated to provide objective evidence of the severity of his condition. *See Jones*, 945 F.2d at 1369–70. Also, as Plaintiff's medical records provided a diagnosis of sleep apnea, he was not required to provide credible medical evidence showing a diagnosis of "narcolepsy or a medical condition that would cause him to spontaneously fall asleep repeatedly," (Tr. 27), as the symptoms and subjective complaints can "reasonably be expected" to result from sleep apnea, *Jones*, 945 F.2d at 1369 (quoting *Duncan*, 801 F.2d at 853. Plaintiff never contended that he had narcolepsy or a condition that caused spontaneous sleep, only that he had bouts of extreme drowsiness as a symptom of sleep apnea. Plaintiff was diagnosed with obstructive sleep apnea, which is a sleep-related breathing disorder and a listed impairment that can cause daytime sleepiness and may disturb cognitive vigilance.[5]

The ALJ did not consider the severity of Plaintiff's diagnosis of sleep apnea or the effectiveness over time of the treatment prescribed initially, in light of the objective medical evidence provided. Thus, the Court finds that ALJ Daughtrey's decision to accord little weight to Plaintiff's sleep apnea diagnosis is not supported by substantial evidence.

### B. Credibility Determinations, Testimonial and Other Evidence Cited by Plaintiff

Plaintiff argues the ALJ erred in his credibility determination by not addressing the consistency between Plaintiff's claims of sleep apnea and the firsthand observations of the SSA claims representative, consultative examiner, and the ALJ himself regarding Plaintiff's

---

[5] "Sleep-related breathing disorders (sleep apneas) are caused by periodic cessation of respiration with hypoxemia and frequent arousals from sleep. Although many individuals with one or more of these disorders may respond to prescribed treatment, in some, the disturbed sleep pattern and associated chronic nocturnal hypoxemia cause daytime sleepiness with chronic pulmonary hypertension and/or disturbances in cognitive function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00H.

drowsiness. (Doc. No. 19 at 5–6.) Plaintiff contends that his falling asleep twice during his consultative examination (Tr. 308) corroborates observations by an SSA claims representative that Plaintiff "nodded off though out [sic] the interview," and those by the ALJ himself that Plaintiff "appeared to fall asleep during the hearing" (Tr. 30). Plaintiff further argues that the ALJ did not properly consider the testimony of his brother, who observed Plaintiff fall asleep at home and at work, and also testified about their loss of jobs because of Plaintiff's falling asleep at work. (Doc. No. 19 at 2.) Plaintiff claims the ALJ erred by failing to give weight to the consistency of those direct observations, and the sleep study technician's observations. (*Id.* at 3.)

An ALJ is to consider a claimant's subjective testimony regarding the severity and effect of his pain once an objective medical basis for the existence of pain has been established. *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009). A claimant's subjective assessment of his symptoms "can support a claim of disability, if there is also objective medical evidence of an underlying medical condition in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). Yet, even where there is medical evidence of an impairment, which could be reasonably expected to cause a claimant's symptoms, the ALJ is not required to credit the claimant's testimony. *Id.* at 476. In making this determination, an ALJ may properly consider the credibility of any statements by the claimant as to his or her symptoms, and this credibility determination is entitled to great weight and deference by the reviewing court. *Id.* However, the ALJ must explain his reasons for discrediting the claimant, and this explanation "must be supported by substantial evidence." *Walters*, 127 F.3d at 531.

Regulations require consideration of the claimant's "statements about the intensity, persistence, and limiting effects of [the claimant's] symptoms," and evaluation of those "statements in relation to the objective medical evidence and other evidence, in reaching a

conclusion as to whether [the claimant is] disabled." 20 C.F.R. § 404.1529(c)(4). The claimant's "symptoms, including pain, will be determined to diminish [his or her] capacity for basic work activities . . . to the extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.*

Here, the ALJ found Plaintiff's allegations of disabling symptoms were not fully credible, yet his only explanation for this finding was that Plaintiff continued to smoke and work part-time until approximately one to two weeks before the hearing. (Tr. 30.) The ALJ also found Plaintiff's brother's testimony was not entirely consistent with the record with regard to the severity of Plaintiff's alleged sleep disorder. (Tr. 27.) The ALJ noted that Plaintiff "appeared to fall asleep at the hearing, and was nudged by the attorney to keep him from doing so." (Tr. 27.) Yet, the ALJ did not appear to weigh this observation, or any other evidence in the record, in judging Plaintiff's inability to stay awake. After consideration of the evidence, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent Plaintiff alleged. (Tr. 28–30.) The ALJ observed that consideration was given to the state agency physicians, who determined that claimant had no severe physical impairment; the examining physician, who found the plaintiff able to perform limited range of light work; and the psychological consultant and psychological examiner, who both concluded Plaintiff had mild to moderate functional limitations. (Tr. 30.) The ALJ stated that after he was diagnosed with obstructive sleep apnea in 2004, Plaintiff made no mention of an inability to stay awake during any subsequent medical treatment or consultation. *Id.*

18

The ALJ indicated that Plaintiff's subjective complaints were considered, but that Plaintiff was not entirely credible regarding the severity of his complaints. (*Id.*) The ALJ found that "[Plaintiff] does have a legitimate breathing disorder." (*Id.*) However, despite Plaintiff's testimony regarding his repeated falling asleep on the job and the fact that "he appeared to fall asleep during the hearing," the ALJ concluded that these symptoms were controlled by bi-level CPAP titration. (*Id.*) The ALJ also found that "if this condition was as severe as [Plaintiff] alleged, he would have continually voiced his concern to medical personnel." (*Id.*) Yet, there does not appear to be any inconsistency between various firsthand observations of Plaintiff's sleepiness by the SSA claims representative, the consultative examiner, and the ALJ, and Plaintiff's testimony about his inability to stay awake. All three individuals observed Plaintiff fall asleep during their encounters with him. These observations are consistent with the testimony of Plaintiff and his brother. The Court finds Plaintiff's statements regarding his symptoms suggest that his sleep apnea may be a severe impairment and may affect his ability to stay awake or concentrate, which could limit his ability to work.

As the ALJ acknowledged in this case, the medical evidence showed that Plaintiff suffered from sleep apnea. (Tr. 27.) The Court finds the reports provided by Dr. Zedalis and others "suppl[y] the requisite objective medical condition to support" Plaintiff's claim of disability due to his sleep apnea. *Jones*, 336 F.3d at 475. ALJ Daughtrey concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some symptoms; however, [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that [Plaintiff] alleged." (Tr. 29–30.) However, the ALJ did not conclude that the medical evidence in the record was inconsistent with

Plaintiff's allegations, nor did he provide adequate reasons as to why he found Plaintiff's claims to lack credibility.

The Court finds the ALJ's credibility determination is not reasonable or supported by substantial evidence because it is unclear whether the ALJ's credibility determination included all of Plaintiff's statements about his sleep apnea symptoms.  If it did, the ALJ failed to adequately explain why he discredited these statements.  Based on the transcript of the hearing provided in the record, it does not appear that the ALJ attempted to determine the intensity and persistence of Plaintiff's sleep apnea symptoms and how those symptoms might affect his ability to work.  The ALJ's decision does not exhibit sufficient consideration of Plaintiff's statements concerning his sleep apnea symptoms, despite the fact that Plaintiff's statements were consistent with medical evidence provided.  Plaintiff's alleged symptoms suggest that his sleep apnea may be a severe impairment, since the inability to stay awake or concentrate during the day necessarily limits a person's ability to perform job functions.

While an ALJ "need not discuss every piece of evidence in the record" he also "may not ignore an entire line of evidence that is contrary to the ruling." *McCombs v. Barnhart*, 106 F. App'x. 480, 484 (7th Cir. 2004) (quoting *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003)).  As previously noted, it is for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including the claimant.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).  However, the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility,"  SSR 96-7p, 1996 WL 374186, at * 4.  Rather, such determinations must find support based on a consideration of "the entire case record."  *Id.*  The ALJ's credibility determinations "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight

the adjudicator gave to the individual's statements and the reasons for that weight."[6] *Id.* "In other words, blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248.

The Court concludes the ALJ's decision does not reflect adequate consideration or discussion of Plaintiff's sleep apnea symptoms, whether his condition constituted a severe impairment, and how his condition affects his ability to work. The ALJ failed to sufficiently explain his credibility determinations, in light of Plaintiff's objective and testimonial evidence, and his finding that Plaintiff's sleep apnea was not a severe impairment. As a result, the ALJ's decision is not supported by substantial evidence in the record.

## IV.    CONCLUSION

For the reasons stated above, Plaintiff's Motion (Doc. No. 15) is **GRANTED in part** and the decision of the ALJ is **REVERSED**. Accordingly, the Court **REMANDS** the case to the Commissioner for further proceedings as outlined above. The Clerk of the Court is **DIRECTED** to close the case. By this Order, the Commissioner's Motion to Stay (Doc. No. 20) is **TERMINATED AS MOOT**.

It is so ORDERED.

Entered this 28th day of March, 2014.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[6] "The requirement that the Commissioner fully explain determinations of the claimant's credibility is grounded, at least in part, upon the need for clarity in later proceedings. . . . 'In the absence of an explicit and reasoned rejection of an entire line of evidence, the remaining evidence is 'substantial' only when considered in isolation. It is more than merely 'helpful' for the ALJ to articulate reasons for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review.'" *Rogers*, 486 F.3d at 248 n.5 (quoting *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985)) (internal ellipsis omitted).